IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02551

CARLOS CUESTA, an Individual, and
ACCESS 4 ALL, INC., a Florida Not for Profit Corporation

    Plaintiffs,

vs.

COLLECTIVE PROPERTIES - MISSISSIPPI, LLC, a Colorado Limited Liability Company,

    Defendant.
_____/

# COMPLAINT

## Introduction

Plaintiffs, CARLOS CUESTA, an Individual, and ACCESS 4 ALL, INC., a Florida Not for Profit Corporation ("Plaintiffs" or "Plaintiffs"), on their behalf and on behalf of all other-mobility impaired individuals similarly situated hereby sues the Defendant, COLLECTIVE PROPERTIES - MISSISSIPPI, LLC, a Colorado Limited Liability Company ("Defendant"), for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 *et seq.* ("ADA") and the Colorado Anti-Discrimination Act, C. R. S. § 24-34-601 *et seq.* ("CADA").

## The Parties

1.    Plaintiff, CARLOS CUESTA, is an individual over eighteen years of age and is otherwise sui juris.

2.    Plaintiff, ACCESS 4 ALL, INC., is a Florida Not for Profit Corporation with a mission of ensuring enjoyment and equal access for disabled persons in all places of public

1

accommodation. This entity was formed under the laws of the State of Florida and remains in good standing.

3. Defendant, COLLECTIVE PROPERTIES - MISSISSIPPI, LLC, a Colorado Limited Liability Company, owns, leases, leases to, or operates a place of public accommodation, in this instance a shopping center, alleged by the Plaintiffs to be operating in violation of Title III of the ADA and the CADA.

## Jurisdiction and Venue

4. Defendant's property is a shopping center/plaza located at 4085 E Mississippi Ave, Denver, Colorado 80246, within Denver County ("Subject Property").

5. Venue is properly located in the District of Colorado because venue lies in the judicial district of the property situs. The Defendant's property is located in and does business within this judicial district.

6. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

7. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

8. The Defendant, COLLECTIVE PROPERTIES - MISSISSIPPI, LLC, owns and operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[2]

---

[1] See, also, 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 C.F.R. § 36.201(a) and 28 C.F.R. § 36.104

9. Plaintiff, CARLOS CUESTA, is an individual with disabilities as defined by and pursuant to the ADA. Mr. Cuesta has cerebral palsy (a motor disability which affects a person's ability to move and maintain balance[3]) and therefore has a physical impairment that substantially limits many of his major life activities[4] including, but not limited to, not being able to walk or stand for anything more than very short periods of time. Due to his disease Mr. Cuesta suffers from hemiparesis (partial paralysis to the left side of his body) and his mobility is limited; thus, he requires the use of either his cane, his wheelchair, or his scooter to ambulate.

10. Plaintiff organization, ACCESS 4 ALL, INC., is comprised of individuals with disabilities, as defined by the ADA. The primary purpose of this organization is to represent the interest of its members by ensuring that they are not discriminated against at places of public accommodation.

## Factual Background

11. Mr. Cuesta is an ADA advocate and a champion for disabled rights. Since becoming aware of his rights, and their constant infringement, he has dedicated his life to ensuring that he, and others like him, have full and equal enjoyment of public accommodations.

12. Mr. Cuesta encounters architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, become arduous and dangerous for himself and other wheelchair users.

13. The barriers to access that Mr. Cuesta experiences at differing places of public

---

[3] https://www.cdc.gov/ncbddd/cp/index.html
[4] as defined by 28 CFR § 36.105(b)(1-2)

3

accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, and non-accessible guestrooms (even when designated "accessible" or "handicapped"). He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past, often to no avail. Thus, he now finds his redress through the ADA, just as Congress intended.

14. Mr. Cuesta has visited the Subject Property on multiple occasions, his most recent visit occurred on or about April 12, 2022.  On this occasion Mr. Cuesta visited the Subject Property as a bone fide purchaser to avail himself of the goods and services offered to the public within but found that the Subject Property contained many violations of the ADA, both architecturally and in policy. He has since returned to the Subject Property, in September of 2022. Mr. Cuesta notes that since his previous visit in April 2022, the Subject Property has resurfaced its parking area and, although the lot is now improved with a smooth surface, the violations listed in paragraph 24 still exist.

15. Although a Florida resident, Mr. Cuesta travels to Colorado regularly, both for pleasure and for business. The members of Access 4 All, Inc. are spread across the United States and have found that Colorado is a desirous place to meet; both due to its geographic location and the breadth of activity that it offers.

16. The Subject Property is not the type of accommodation that requires reservations, but Mr. Cuesta intends to return on or about November 1, 2022, and/or on or about February 1, 2023, during his next visits to the Denver area - where he is a frequent traveler, regularly conducts business, and is speculating on property. He intends to revisit the Subject Property not only as a bone fide purchaser but also to monitor any progress made with to respect to ADA compliance.

17. Mr. Cuesta has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Subject Property.

18. The ADA has been law for over thirty (30) years and the Subject Property remains non-compliant. Thus, the Plaintiffs have actual notice and reasonable grounds to believe that they will continue to be subjected to discrimination by the Defendant.

19. Plaintiffs have a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers he has personally experienced which are listed in paragraph 24 of this complaint.

20. Following any resolution of this matter Mr. Cuesta will ensure that the Subject Property undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection will occur as set forth in the parties' settlement agreement or as ordered by this Court.

## COUNT I
### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*

21. The Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

22. The Defendant has discriminated against the Plaintiffs, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property, as prohibited by the ADA.

23. A preliminary inspection of the Subject Property has shown that violations of the ADA exist. That inspection, performed by Plaintiffs' expert, further revealed that the remediation

5

of all violations/barriers listed in paragraph 24 are both technically feasible and readily achievable.

24. The following are architectural barriers and violations of the ADA that Mr. Cuesta has personally encountered (or was prevented from encountering) during his visits to the Subject Property:

**Parking and Exterior Accessible Route**

a. The designated accessible parking spaces throughout the Subject Property contain slopes and cross-slopes which exceed the allowable limits; in violation of the ADAAG and Section 502 of the 2010 ADA Standards. Sloping and cross-sloping present Mr. Cuesta with a tipping hazard. To avoid these obstacles, he was forced to travel around them and through the traffic area while traversing the exterior accessible route which leads from the exterior to the entrance. The remediation of these barriers is both technically feasible and readily achievable.

b. The Subject Property fails to provide the requisite number of compliant accessible parking spaces and van-accessible parking spaces, a violation of the ADAAG and Section 502 of the 2010 ADA Standards. Mr. Cuesta was forced to park away from the plaza so that he could freely access his vehicle; he then traveled through the traffic area of the parking lot to reach the building. The remediation of these barriers is both technically feasible and readily achievable.

c. The Subject Property contains accessible parking signs which are posted at insufficient heights (or missing altogether), in violation of ADAAG Section 4.6 and Section 502 of the 2010 ADA Standards. Due to this deficiency Mr. Cuesta had to be diligent in securing accessible parking. The remediation of this barrier is both technically feasible and readily achievable.

**Entrance Access and Path of Travel**

d. The curb ramps located at the Subject Property contain sloping above the allowable limits; a violation of the ADAAG and Section 406 of the 2010 ADA Standards. These curb ramps have prevented Mr. Cuesta from freely unloading from his vehicle and have presented him with danger of tipping and falling from his wheelchair – this could cause him physical harm and damage to his wheelchair. The remediation of this barrier is both technically feasible and readily achievable.

e. The exterior ramps at the Subject Property lack compliant level landings at the top and bottom of each run and lack the required handrails; in violation of Section 4.8 of the ADAAG and Section 405.8 of the 2010 ADA Standards. The lack of level landings makes use of the ramps unsafe for Mr. Cuesta as they present a tipping hazard and could cause damage his wheelchair. The remediation of this barrier is both technically feasible and readily achievable.

f. There is no compliant route from transit, sidewalk, and parking areas to access the facilities at the Subject Property, a violation of ADAAG Sections 4.1.2 and 4.3 and Sections 402, 403, 405, and 406 of the 2010 ADA Standards. Mr. Cuesta was forced to travel through the traffic area of the parking lot and around obstacles to reach the facilities. Situations such as this cause him great distress. The remediation of this barrier is both technically feasible and readily achievable.

g. The accessible route at the Subject Property fails to provide a safe accessible route to the curb ramps and the facilities as it contains cross-sloping and abrupt changes greater than the allowable limits in violation of Section 4.3 of the ADAAG and Section 402 and 403 of the 2010 ADA Standards. When travelling from the parking lot to the building Mr. Cuesta

  was forced travel around these obstacles and into the traffic area of the center which has placed him in the path of oncoming vehicles, causing him distress and anxiety. The remediation of this barrier is both technically feasible and readily achievable.

h. The Subject Property fails to provide a safe, compliant, and accessible route to the street or sidewalk; in violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards. Due to this barrier Mr. Cuesta could not access the Subject Property from those areas; limiting his options for transportation and access. The remediation of this barrier is both technically feasible and readily achievable.

i. The Subject Property fails to connect the accessible route throughout the property, as the route contains steps and cross slopes that impede Mr. Cuesta from safely accessing some areas of the Subject Property; in violation of Section 4.3 of the ADAAG and Section 402 and 403 of the 2010 ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

**Access to Goods and Services**

j. Dining tables within the restaurant tenant spaces, Thai Pan and Pizza Hut, fail to provide appropriate toe and knee clearance; in violation of the ADAAG and Section 902 of the 2010 ADA Standards. Due to the lack of accessible tables Mr. Cuesta could not dine in a comfortable manner. The remediation of this barrier is both technically feasible and readily achievable.

k. Payment counters and interior paths within tenant spaces, Thai Pan, 7-Eleven, Pizza Hut, and Smokes and Vapes, fail to provide appropriate clearance, are mounted improperly, and equal facilitation is not provided to those in wheelchairs. The foregoing is a violation of Section 4.3 of the ADAAG and Section 402 and 403 of the 2010 ADA Standards. The

remediation of these barriers is both technically feasible and readily achievable.

**Restrooms**

l. The restrooms provided within the tenant spaces Thai Pan and 7-Eleven are not ADA compliant and are unsafe for use by Mr. Cuesta. The barriers to access personally experienced by Mr. Cuesta within the restrooms include inaccessible water closets which lack proper controls, improper grab bars, improperly mounted mirrors, improper door hardware, and flush controls mounted on the wall side; in violation of ADAAG and Section 601 of the 2010 ADA Standards. Mr. Cuesta could not freely access the restroom without assistance. The remediation of these barriers is both technically feasible and readily achievable.

m. The restrooms located within Thai Pan and 7-Eleven provide dispensers which are mounted beyond Mr. Cuesta's reach, a violation of ADAAG and Section 308 of the 2010 ADA Standards. While using these restrooms Mr. Cuesta could not access the dispensers due to their improper location. The remediation of these barriers is both technically feasible and readily achievable.

n. The restrooms within Thai Pan and 7-Eleven contain improper centerlines for the water closets and flush controls which are mounted on the wall side; a violation of the ADAAG and Section 604 of the 2010 ADA Standards. Mr. Cuesta could not access the flush controls due to their improper location; thus Mr. Cuesta has been unable to make full use of these restrooms without assistance. The remediation of these barriers is both technically feasible and readily achievable.

o. Grab bars within the restrooms at Thai Pan and 7-Eleven are improperly mounted and the requisite amount of clear space is not provided; violating the ADAAG Sections 4.16 and

9

      4.17 and Sections 604 and 609 of the 2010 ADA Standards. Mr. Cuesta could not safely transfer to the water closet due to the improper location of the grab bars and the lack of clear floor space. The remediation of these barriers is both technically feasible and readily achievable.

    p. Mr. Cuesta could not make use of the mirror within Thai Pan and 7-Eleven restrooms due to their incorrect mounting heights, a violation of the ADAAG and Section 306 of the 2010 ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

25. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[5]

26. The discriminatory violations described in paragraph 24 may not be an exhaustive list of the ADA violations that exist at the Subject Property, but they are the result of a preliminary inspection conducted by the Plaintiffs and include all those personally experienced by Mr. Cuesta. Plaintiffs require thorough inspection of the Defendant's place of public accommodation to photograph and measure the architectural barriers which exist at the Subject Property in violation

---

[5] 28 CFR § 36.104

of the ADA/CADA.

27.     Mr. Cuesta, and all others similarly situated, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

28.     Defendant has discriminated against Mr. Cuesta, and all those similarly situated, by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

29.     Defendant continues to discriminate against Mr. Cuesta, and all those similarly- situated, by failing to remove architectural barriers, and communication barriers that are structural in nature.[6]

30.     Defendant continues to discriminate against Mr. Cuesta, and all those similarly- situated, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[7]

31.     Defendant continues to discriminate against Mr. Cuesta, and all those similarly situated, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[8]

32.     If the Defendant's facility is one which was designed and constructed for first occupancy

---

[6] 42 U.S.C. § 12181(b)(2)(A)(iv)
[7] 42 U.S.C. § 12181(b)(2)(A)(ii)
[8] 42 U.S.C. § 12181(b)(2)(A)(iii)

after January 26, 1993[9] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

33.     Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Subject Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Subject Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Cuesta, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[10] Discovery in this matter will reveal when such alterations have taken place at the Subject Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Subject Property into compliance with the ADA.

34.     Pursuant to 28 C.F.R. § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

35.     28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element - that has not been altered - must comply with or be modified to meet. Those are defined as follows:

       a. Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

       b. Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to

---

[9] as defined by 28 C.F.R. § 36.401(a)(2)
[10] 28 CFR § 36.402(a)(2)

   the extent readily achievable) to comply with either the 1991 Standards or the 2010 Standards.

  c. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with the 2010 Standards.

36. Plaintiffs are not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiffs have found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In their experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

37. Mr. Cuesta is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

38. Pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

39. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Mr. Cuesta injunctive relief, including an order to require the Defendant to alter the Subject Property and make the Subject Property readily accessible and useable to the Plaintiffs and all other persons with disabilities as defined by the ADA; or by closing the Subject Property until such time as the Defendant cure their violations of the ADA.[11]

---

[11] 42 U.S.C. § 12188(b)(2)

**WHEREFORE,** Plaintiffs respectfully request:

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to cure all ADA violations existing at the Subject Property listed herein or later found through discovery; to make the Subject Property accessible to and usable by individuals with disabilities; and to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Subject Property - as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II
**Violation of Colorado Anti-Discrimination Act,
C.S.R. § 24-34-601 et seq. (CADA)**

40. The Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

41. Carlos Cuesta is a disabled individual as defined by C.S.R. § 24-34-301(2.5).

42. Defendant's facility is a place of public accommodation as defined by C.S.R. § 24-34-601(1).

43. Colorado law provides that no person shall be discriminated against in regards to public accommodations on the basis of disability.[12]

44. Pursuant to C.S.R. § 24-34-602(1) Mr. Cuesta is authorized to bring a private action in any court of competent jurisdiction and to receive monetary damages.

45. Pursuant to C. S. R. § 24-34-602(1)(b) a person who violates provisions of the CADA based on a disability "shall be subject to the provisions of section 24-34-802." C. S. R. § 24-34-802 allows for a court order requiring compliance with the provisions of the violated section of the CADA, recovery of actual monetary damages, a statutory fine not to exceed three thousand five hundred dollars ($3,500.00), and an award of attorney fees and costs.

46. Pursuant to 3 CCR 708-1:60.1(A); the CADA, "is substantially equivalent to Federal law, as set forth in the Americans with Disabilities Act, as amended, and the Fair Housing Act concerning disability."

47. Pursuant to C.S.R. § 24-34-802(4); "a court that hears civil suits pursuant to this section shall apply the same standards and defenses that are available under the federal 'American with Disabilities Act of 1990', 42 U.S.C. § 12101 et seq., and its related amendments and implementing regulations."

48. As set forth above, Defendant has violated the CADA by denying Mr. Cuesta, and all other disabled individuals, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations afford to the public at a place of public accommodation.

49. As a result of the aforementioned discrimination, through repeated exposure to architectural barriers and other harmful conditions, Mr. Cuesta has sustained bodily injury in the

---

[12] C.S.R. § 24-34-601(2)(b)

form of emotional distress, mental anguish, suffering and humiliation.

**WHEREFORE**, Plaintiffs respectfully request:

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendants are in violation of the CADA.

c. An injunction ordering Defendant to immediately comply with the CADA by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the individual Plaintiff's damages (to the maximum extent permitted), attorney's fees, and litigation expenses; including expert's fees and costs.

e. An order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Subject Property - as required by the CADA.

f. Other relief that this Court deems just and proper and is allowable under the CADA.

Respectfully submitted on this 30th day of September 2022,

>  */s/ Jon G. Shadinger Jr.*
> Jon G. Shadinger Jr., Esq.
> Shadinger Law, LLC
> 717 E. Elmer Street, Suite 7
> Vineland, NJ 08360
> Direct (609) 319-5399
> Office (609) 236-3211
> Fax (609) 900-2760
> js@shadingerlaw.com
> *Attorney for Plaintiffs,*
> *Carlos Cuesta and Access 4 All, Inc.*